Our sixth case for this morning is United States v. Sanchez-Lopez. Mr. Toth. May it please the Court, Joseph Toth, Federal Defenders of Wisconsin, for the appellant Jesus Sanchez-Lopez. So in this case, the defendant faced a guideline range of 15 to 21 months. You're not getting an above-guideline sentence of 24 months. And because, you know, the numbers here are not staggering, I think there's a temptation to think that this is not an important court case. But if you look at it closely, there's some interesting sentencing principles going on, some fundamental sentencing principles going on in this case. So our claim is that the court did not adequately explain the sentence, so it's procedurally unreasonable. And, you know, the sentencing transcript is somewhat quick. And as these often do, the judge sort of goes through kind of a mechanical recitation of the factors. He provides some sort of generalized answers. But he's not, I mean, as you say, it's pretty short. So, I mean, it's right here in your brief. It seems to me the judge does a lot of the things that you're saying he didn't do. A couple of times, one of them I'm seeing around page 11, he says, I want to give you credit for the apparent fact that you haven't engaged in at least serious criminal conduct since you returned. He talks about the drinking, talks about, you know, the fact that he does seem to be somewhat incorrigible about coming back after being removed from the country. And so the judge, I think, quite consistently with 3553A is taking, I mean, he doesn't quite phrase it as deterrence, but it's a deterrence function that he's taking into account, both specific and general. Well, I agree, Your Honor. And it's what you said there almost at the end, which is he doesn't phrase it as a deterrence issue, right? But it's a synonym. He's saying, you know, what is it going to take to get through to you? What is it going to take to make you stop violating the laws of the United States the way you are? That's the question he's asking. Well, I mean, if you look at the mechanics of sort of how this broke down, it was, you know, he said that the defendant benefited from a favorable PSR calculation as to when his reentry date was. And so obviously, you know, the PSR gets circulated. Which is true, right. There was a big difference between what the 10-year span would have been if it was 2013 or 2014, right? That's correct. That's correct. But if you look at, you know, what usually happens here is, so, you know, the PSR gets circulated beforehand. The parties, they object or they don't object. So in this case, there was no objection. PSR, the judge then formally on the record adopts that PSR, so that's sort of making that factual finding, and then proceeds to sort of immediately kind of kick the guidelines to the nerves. Okay, well, you benefited from the favorable one, so, you know, we're going to go to 21 to 27. The judges are encouraged to do that. The guidelines are a starting point. They're an anchor. They're a baseline, whatever you want to call them. And the judges have been told over and over again that 3553A is there to fine-tune. He fine-tunes it up by three months, which is, you know, something. I don't trivialize three months in prison. But nonetheless, I mean, the judge thinks a tweak of three months is necessary to represent this particular man's characteristics and the need to deter him from further violations of the law. He's going to be back out on the streets. He's going to be back in Mexico after two years. And the judge is hoping he's not then going to come back to the United States. No, Your Honor, we do not disagree with anything you said right there. I mean, we have not challenged the substantive reasonableness of this sentence. If the sentencing judge had explained it as you had now, we may have no case. He did explain it that way. On page 4 of the sentencing transcript in the Q&A with counsel and on page 14, it's a clear individual and general deterrence message articulated as such. He says, you know, send a message to you and to possibly other. Who reenter this country for lots of economic and other hardship reasons. And at least sending a message to this defendant that he simply has to make a life in Mexico, notwithstanding whatever pulls there may be for him to attempt to return to this country. That's on top of what Judge Conley said very early on in the sentencing transcript or in the sentencing hearing about his primary concern about this case. I mean, if this is procedurally flawed, then we're going to be having, you know, three-hour sentencing proceedings and very simple, straightforward reentry cases. Not necessarily. I mean, you're right. He's only said enough to justify a three-month upward variance. But again, I mean, that sentence, and I understand, I mean, you know, deterrence is a 35-53 factor, but that sentence really provides no information individually. It provides a ton of information about what the judge was concerned about and more than adequately justifies a three-month variance. This is just a quixotic argument. Well, Your Honor, I mean, there's possibly no federal statute in a sense that is violated more frequently, meaning that the persons who tend to violate it tend to be repeated violators than legal reentry. That doesn't mean judges aren't entitled to consider that very fact in issuing graduated penalties. He had previously been sentenced to 18 months. The message did not get through. So the judge was going to up the ante in order to make sure the message did get through and also to send the message to general violators. You're making an argument against yourself here. No, no, certainly. I mean, if we were to go back to before Irizarry and how the sentencing regime used to be, where, you know, for a departure, now a departure is when the court goes above the guidelines. That's no longer relevant. Right. No, I mean, I know Rule 32 is no longer operative, but I think there's some insight into this case, which is basically it informs the defense counsel with the PSR that this is sort of where the sentencing inflection point of this hearing is going to be. And he told you that right from the get-go of the sentencing hearing. This is what I'm concerned about, he said. He had an 18-month sentence, and still he reentered. Right. That didn't get the message through, and so something more than the guidelines range is going to be required here to tell me why I'm wrong. So you were given ample opportunity to argue against it. The procedure here was flawless. I mean, obviously, respectfully, we disagree in the sense that what was said here does not relate in any way to this particular defendant. Oh, come on. He went on in detail about this defendant's particular characteristics. All of the mitigating factors were noted, and he was credited for them. They just didn't outweigh the main concern that the judge came into the sentencing hearing with, that he gave ample notice of. Your Honor, the difference, as I mentioned, between departure and a variance, a variance would be about the nature and circumstance of this offense, which would particularly be the illegal reentry into the United States. The factors here in terms of a graduated sentence, in terms of a criminal history that was overstated because of this 10-year finding, those particularly would have been under the notice provision departure, alerted the defense counsel, here's before the sentencing sort of where we're at and what we're concerned about. The nature and circumstance of this offense, he says, okay, the judgment, the factual finding, I agree that you came to take care of your wife and you haven't had any serious crimes in the last couple of years. What I'm concerned about is giving a greater sentence than you got in 2011 or this 2002 offense, and the defense counsel could have addressed those and prepared for those. That's exactly what Judge Connolly did at the beginning of the hearing. He announced his concern and gave everybody a chance to address it. Yes, sir. If there's no further questions. You can stay the rest of your time. That's fine. Ms. Altman. Good morning, Your Honors. May it please the Court, my name is Elizabeth Altman and I represent the United States in this case. In his reply brief and again here today, the defendant claims that what matters on this appeal is whether or not the sentencing judge explained his sentence. I think as has already been detailed extensively in the prior argument, the Court did. In addition to the deterrence statement that Judge Sykes read, the Court also said that he had ignored the laws of this country. He detailed the violations that the defendant had occurred on the record. He indicated there were four DWIs, he indicated there was a battery, and he actually gave him credit for the battery being 14 years ago. He said, I'll be at 14 years ago, and he was concerned about a sexual assault of a child. He indicated that he was concerned that the defendant's criminal history was underrepresented, a factor that the judge can consider. He also said that the defendant was a danger to the community when he drank. Again, another factor. And he did say that he wanted to send a message. All of these things are on the record. They were articulated by the judge, and they support the sentence given. With regard to giving notice, I would also point out that on page 7 of the sentencing transcript, defense attorney says, I'm well aware of the arguments about incremental punishment. We make that argument quite frequently. I didn't request a specific sentence in my letter to the court, knowing that would be a concern for this court. So going into it already, defense counsel was aware of what the concerns would be. The judge also addressed the mitigating arguments, both the ones that were made ahead of time, that is that he came back to help an ailing girlfriend, that he had not committed any serious crimes. He addressed the argument such that it was made at sentencing, that perhaps he could have possibly received a lower guideline in Arizona due to some guideline amendments. In the judge's opinion, that didn't matter because what he was doing, that particular factor, was going above. So Ms. Goldman, can you remind me, this must have gone through at the plea hearing, what the statutory maximum for this offense is? It depends on the priors, Your Honor. Our plea letters detail each subsection of the statute, what the maxes are. With this particular defendant, I believe that it was 10 years, but I could not say that. So normally in the course of accepting a guilty plea, the court will inform a defendant of what the statutory maximum, and then of course there's the usual, you know, then there's going to be the pre-sentence report. I'll decide ultimately. But if the defendant had already been told that the statutory maximum was 10 years, then I guess that places a little bit of context for the 24 months. Correct, and our plea letters also, the defendant has to acknowledge the fact that the court doesn't have to follow the sentencing guidelines and can impose any sentence up to and including the maximum penalties set forth in the plea agreement. So that is made clear to the defendant quite early on in the process as well. So the bottom line is the court did consider the proper factors. It did in great detail explain how those factors played into the sentence he imposed. He considered the defendant's arguments, and this was a proper sentence. Unless the court has questions, I would respectfully request that the court affirm the sentence. I see none, so thank you very much. And do you have anything further, Mr. Toth? I have nothing further. I want to ask questions. I see none, so thank you very much. Thanks to both counsel.